**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>      Defendants. | Case No. 26-cv-255 |

**<u>Declaration of Keaton Smith</u>**

I, Keaton Smith, declare as follows:

I am an attorney at law, duly admitted to practice before the United States District Court for the Western District of Pennsylvania. I am one of the attorneys for Plaintiff Milwaukee Electric Tool Corporation. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

1.      According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.1 Of the 27,000 in total IPR seizures, over

24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong[1].

2.    According to a report released by the U.S. Chamber of Commerce Global Intellectual Property Center (GIPC) titled *Measuring the Magnitude of Global Counterfeiting,* at least 86 percent of all global counterfeit products originate in Chinese and Hong Kong markets[2].

3.    A February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue[3].

4.    Based on my research, there is no treaty between the United States and China establishing recognition of judgments from United States courts in China.

5.    I am informed and believe that Counterfeiters like Defendants utilize several common tactics to avoid detection or to evade civil liability.

6.    For example, I am informed and believed that Counterfeiters like Defendants will often register new e-commerce stores under new aliases once they receive notice of a lawsuit.

---

[1] *See* INTELLECTUAL PROPERTY RIGHTS SEIZURE STATISTICS, FISCAL YEAR 2021, CBP PUB. 2018-0922, U.S. CUSTOMS BORDER PROT. https://www.cbp.gov/document/annual-report/fy-2021-ipr-seizure-statistics.

[2] U.S. CHAMBER OF COM. GLOB. INTELL. PROP. CTR., MEASURING THE MAGNITUDE OF GLOBAL COUNTERFEITING (2016) https://www.uschamber.com/assets/archived/images/documents/files/measuringthemagnitudeofg lobalcounterfeiting.pdf.

[3] FRONTIER ECON., INT'L CHAMBER COM. BUS. ACTION TO STOP COUNTERFEITING & PIRACY & INT'L TRADEMARK ASS'N, THE ECONOMIC IMPACTS OF COUNTERFEITING AND PIRACY (2017), https://www.inta.org/wp-content/uploads/public-files/perspectives/industry-research/2017_Frontier_Report.pdf.

7.      On information and belief, most, if not all, Defendants are located in China. Based on my research, there is no treaty between the United States and China establishing recognition of judgments from United States courts in China; infringement must instead be curbed by definitive domestic judgment.

8.      I am informed and believe that infringers like Defendants monitor PACER for new federal filings before an *ex parte* TRO can be imposed or service can be effectuated for the purpose of being able to move assets from their financial accounts to offshore bank accounts outside the jurisdiction of this Court and evade civil liability.

9.      Off-shore e-commerce store operators offering for sale products using infringing intellectual property typically: (1) provide false, misleading and/or incomplete names and physical address information to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their third- party service providers and customers. Email has proved to be a reliable mechanism for quickly providing notice to e-commerce store operators in similar cases.

10.     An investigation of the e-commerce stores operating under the Seller Aliases identified in the Complaint shows that few, if any, provide a complete and accurate physical address on the e-commerce store.  In most instances, Defendants must provide an e-mail address to third-party online marketplace platforms such as Amazon, Temu, Walmart and others when registering their account. E-mail address verification is typically a straightforward process where the third-party online marketplace platforms send an e-mail to the provided e-mail address and require the user to click a link in the e-mail. Since an e-commerce store operator can input any physical address, such addresses may be incomplete, false and/or are not where the e-commerce

store operator is located. As such, even if a physical address is available, it is not reliable or the best means for providing notice to Defendant.

11.     I have reviewed the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention") to which China is a signatory. The Hague Convention does not preclude service by e-mail. Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known[4]."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: February 11, 2026                          Respectfully submitted,

By: /s/ Keaton Smith
Keaton Smith IL #6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*

---

[4] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 1969 U.S.T. LEXIS 152, at *16.