## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MILWAUKEE ELECTRIC TOOL
CORPORATION,

        Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE A TO THE COMPLAINT,

        Defendants.

Case No. 26-cv-255

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE, <ins>AND EXPEDITED DISCOVERY</ins>

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF FACTS .............................................................................. 2

III.   THE COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION ................. 3

IV.    THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER ................. 8

   A.   Plaintiff Will Likely Succeed on the Merits. ...................................................... 10

   B.   There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the
   Absence of Preliminary and Emergency Relief. ...................................................... 12

   C.   The Balancing of Harms Tips in Plaintiff's Favor. ............................................... 14

   D.   The Public Interest Is Served by Entry of a Temporary Restraining Order. ...................... 14

V.     DEFENDANTS ARE PROPERLY JOINED IN THIS ACTION ................................. 17

VI.    PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY ...................................... 18

VII.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ....................................... 19

VIII.  CONCLUSION ........................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    <u>INTRODUCTION</u>

Plaintiff Milwaukee Electric Tool Corporation ("Plaintiff") has filed this trademark infringement action against the defendants identified on Schedule A to the Complaint (collectively, "Defendants") based on Defendants' utilizing unauthorized, unlicensed, and infringing versions of Plaintiff's trademarks to sell and/or offer for sale various competing products (the "Infringing Products"). *See* Compl. ¶ 50; Declaration of Jay Harvey Paragoso ("Paragoso Decl.") ¶ 16. Plaintiff submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction and a temporary asset restraint, an order to show cause why a preliminary injunction should not issue, and for expedited discovery (the "*Ex Parte* Motion").

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement against the Defendants. As alleged in Plaintiff's Complaint, Defendants are, *inter alia*, selling Infringing Products utilizing infringing copies of Plaintiff's registered trademarks (the "MILWAUKEE Marks") that are displayed, featured, or advertised alongside the Infringing Products. *See* Compl. ¶¶ 84–88. Plaintiff has not granted any license or authorization to Defendants to use the MILWAUKEE Marks, yet Defendants use Plaintiff's intellectual property through various fully interactive, commercial internet stores operating under at least the seller names and IDs set forth on Schedule "A" to the Complaint (collectively, the "Seller Aliases").

Each Defendant in this action runs a sophisticated unlawful operation and is reaching out to do business with Pennsylvania residents by operating one or more commercial, interactive Seller Aliases, through which Pennsylvania residents can purchase Infringing Products. The Seller Aliases share unique identifiers establishing a logical relationship between them. *See* Compl. ¶¶

42–55. Further, Defendants appear to attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their unlawful operation. Id. Plaintiff is forced to file this action to combat Defendants' continued infringement of its trademarks, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

II.    **STATEMENT OF FACTS**

A.  **Plaintiff's Trademarks and Products**

Plaintiff is also the owner or exclusive licensee with standing to sue for infringement of multiple trademarks registered with the U.S. Patent and Trademark Office (collectively, the "MILWAUKEE Marks"), which are valid, subsisting, and in full force and effect, and which are asserted in this action in connection with Plaintiff's power tools, batteries, chargers, and related accessories. *See* Compl. ¶¶ 9–17, 19–22; Paragoso Decl. ¶¶ 4–9 & Compl. Ex. 1. Plaintiff's MILWAUKEE Marks are distinctive when applied to Plaintiff's products, demonstrating to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality and safety standards. *Id*. Plaintiff's MILWAUKEE Marks are widely recognized and have been continuously used and never abandoned. The MILWAUKEE Marks asserted in this action are identified in the Complaint and supporting declaration. *See* Compl. ¶¶ 2-5; Paragoso Decl. ¶ 4-7 & Compl. Ex. 1.

| Trademark |
| --- |
| MILWAUKEE |
| M18 |
| M12 |

2



Plaintiff has invested substantial time, money, and effort producing, licensing, and promoting the MILWAUKEE Marks. *See* Paragoso Decl. ¶¶ 8–10, 17–21. Milwaukee manufactures and sells products through its own online webstores and through authorized distributors and retailers, and it licenses the use of certain of the MILWAUKEE Marks to a limited number of authorized partners around the world (collectively, the "Plaintiff's Products"). *Id.* ¶¶ 10–12. The presence of Plaintiff's MILWAUKEE Marks increases the value of the Plaintiff's Products by increasing brand awareness and consumer confidence. *See* Compl. ¶¶ 36, 72.

## B. Defendants' Unlawful Activities.

The marketplace success of Plaintiff's products has resulted in significant infringement of the MILWAUKEE Marks. *See* Compl. ¶ 47; Paragoso Decl. ¶ 11. Consequently, Plaintiff maintains an anti-counterfeiting and brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers and channel partners. Paragoso Decl. ¶ 12. Plaintiff has identified numerous fully interactive e-commerce stores, including those operating the Seller Aliases, which were offering for sale and/or selling infringing products embodying the MILWAUKEE Marks to consumers in this Judicial

District and throughout the United States. *See* Compl. ¶¶ 47-51; Paragoso Decl. ¶¶ 12-14 & Compl. Ex. 2.

Additionally, use of the MILWAUKEE Marks by the operators of the Seller Aliases bears similar irregularities and indicia of infringement, suggesting that the Seller Aliases originate from common sources and that Defendants are interrelated. *See* Compl. ¶ 58.

## III.  THE COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION

This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the Lanham Act, 15 U.S.C. § 1051.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district, Defendants are subject to personal jurisdiction in this district, and Defendants conducted infringing activities directed at consumers in this district through their interactive e-commerce operations. Federal courts may also "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft,* 566 F.3d 94, 102 (3rd Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F. 2d 434, 436 (3rd Cir. 1987)).

The determination of personal jurisdiction requires a two-step inquiry. First, the court must determine whether the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. Fed. R. Civ. P. 4 (e)(1). Second, if the forum state allows jurisdiction, the court must determine whether exercising personal jurisdiction over the defendant in a given case is consistent with the Due Process Clause of the U.S. Constitution. *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998).

3

In this matter, Defendants' infringing activities subject them to long-arm jurisdiction in Pennsylvania under 42 P. A. Cons. Stat. § 5322. Furthermore, Pennsylvania's exercise of jurisdiction over Defendants thereunder comports with due process.

**A. Defendants are Subject to Personal Jurisdiction Under the Pennsylvania Long Arm Statute, 42 P.A. C.S.A. § 5322.**

Pennsylvania authorizes personal jurisdiction over the Defendant pursuant to 42 Pa. Cons. Stat § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit… (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth. . . (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation, or use, of an interactive website through which consumers can purchase products. Here, Defendants' Seller Aliases allow for customers all over the United States of America (including within Pennsylvania) to view and purchase the Infringing Products, as demonstrated by screenshots showing that Defendants were offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. *See* Paragoso Decl. ¶ 13; Compl. Ex. 2; *see e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d

4

117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

This Court may properly exercise personal jurisdiction over Defendants because Defendants directly target business activities toward consumers in the United States, including Pennsylvania, by setting up and operating e-commerce stores that target U.S. consumers using one or more seller aliases through which Pennsylvania residents can purchase Infringing Products. *See Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 (E.D. Mich. 2006) (defendant's local sale of counterfeit "Newport" cigarettes had an economic effect on interstate commerce)*; A1 Mortg. Corp. v. A1 Mortg. And Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006) (while plaintiff's provision of services was "predominantly intrastate" in character, its mark was eligible for protection since, even absent an interstate sale, its advertising crossed state lines and, therefore, had entered interstate commerce), *see also*, *A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL 30317 (W.D. Pa. 2007) (court awarded permanent injunctive relief in its award of summary judgment to plaintiff).

Here, each of the Defendants is engaging in interstate commerce, committing tortious acts in Pennsylvania, and has wrongfully caused Plaintiff substantial injury in the Commonwealth of Pennsylvania. Therefore, this Court has personal jurisdiction over Defendants because they have intentionally advertised and sought out to do business in Pennsylvania utilizing MILWAUKEE Marks via their Seller Aliases and websites to facilitate the sale of Infringing Products.

Courts have indeed found that "commercial sellers" on "well-known, national . . . website[s]" are in fact subject to personal jurisdiction, as these Defendants "must have been able to foresee the possibility of being hauled into court [in the present jurisdiction]." *Malcom v. Esposito*, 63 Va. Cir. 440, 446 (Cir. Ct. 2003); *see also EnviroCare Techs., LLC*, 2012 U.S. Dist.

5

LEXIS 78088, at *12. Whether a Defendant physically shipped Infringing Products into Pennsylvania is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state. *See Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (W.D. Pa. 1997); *Rolex Watch, U.S.A., Inc. v. Pharel*, 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249, at 6 (E.D.N.Y. Mar. 11, 2011) (finding personal jurisdiction over defendant, a resident of South Carolina, because he transacted business in New York by monitoring and responding to inquiries for counterfeit watches through websites accessible in New York).

Moreover, when analyzing personal jurisdiction in the Internet context, courts focus on the nature and quality of a defendant's online operations, specifically including their offering for sale and/or selling of Infringing Products through their highly interactive Seller Aliases, along with Defendants' own representations that they ship Infringing Products to the U.S., including to Pennsylvania addresses, which unequivocally establishes that Defendants conduct business within this District and that the claims in this suit arise from Defendants' business dealings and transactions with consumers in Pennsylvania. *See Zippo,* 952 F. Supp. 1119.

**B. Exercising Personal Jurisdiction Comports with Due Process.**

The assertion of personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts ... such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). This Court may exercise personal jurisdiction when the plaintiff can establish that the cause of action at issue arose from the defendant's activities within the forum state. *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. at 414 (1984). The plaintiff initially bears the burden of proving a prima facie case, by a preponderance of the evidence, that the defendant's contacts with the forum state meet the "minimum contacts" test. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985).

Finally, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *O'Connor v Sandy Lane Hotel Co., Ltd*, 496 F.3d 312, 316 (3rd Cir. 2007) (quoting *Int'l Shoe*, 326 U.S. at 316). Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477). The burden upon the defendant at this stage of the inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207 (3rd Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3rd Cir.1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). As the Third Circuit has observed:

> The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [t]he procedural and substantive interests of other nations.

*O'Connor,* 496 F.3d at 324 (internal quotations omitted).

"The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant." *Osteotech, Inc. v. GenSci Regeneration Scis.*, 6 F. Supp. 2d 349, 354 (D.N.J. 1998).

7

Here, the Plaintiff's interest in obtaining effective relief in the forum of its choice and Pennsylvania's interest in protecting its citizens from the sale of the Infringing Products within its borders are factors that weigh heavily in finding personal jurisdiction of the Defendants. *See Square D*, 2008 WL 4462298 at \*12 (concluding that jurisdiction should be exercised in Pennsylvania "because the counterfeit goods in question potentially pose a danger to the public and were sold to residents of this Commonwealth."); *Zippo,* 952 F.Supp. at 1127 (noting Pennsylvania's strong interest in resolving trademark infringement claims implicating its citizens and giving "due regard to the Plaintiff's choice to seek relief in Pennsylvania").

Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

## IV.    **THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER**

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b).

To obtain relief, the moving party must show: (1) a likelihood of success on the merits; (2) they will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004) (citation omitted). While courts must balance all four factors, *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982), this Circuit has placed significant weight "on the probability of irreparable

harm and the likelihood of success on the merits" factors. *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990)).

Courts routinely grant preliminary injunctive relief when a party's intellectual property rights are threatened by the sale of counterfeit versions of its products based on a rights holder's inability "to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.,* 806 F.2d 392, 395 (2d Cir. 1986).

Courts have recognized that civil actions against operators of e-commerce stores like the Seller Aliases present special challenges that justify proceeding on an *ex parte* basis. *See Airigan Sols., LLC v. Rainbow Island Store,* Civil Action No. 2:23-cv-1327, 2023 U.S. Dist. LEXIS 231997, at *5 (W.D. Pa. July 28, 2023) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Defendants' offshore counterfeiting activities are specifically designed to be covert, and as it is essential to establish an economic disincentive for infringement, courts regularly issue *ex parte* temporary restraining orders for such cases. *SHNMIN LLC v. BGDZJGFZJGFKHZGJ, et al.* No. 2:25-cv-00309 (W.D.Pa. March 6, 2025); *Xiaoyan Qian v. The Individuals, et al.* No 2:25-cv-00345 (W.D.Pa March 10, 2025); *Intenze Products, In.c v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018); *Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018).

The entry of a TRO is appropriate here because it would immediately stop the Defendants from benefiting from their wrongful use of Plaintiff's Trademark and preserve the status quo until a hearing can be held. In the absence of a TRO without notice, the Defendants can and likely will

register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Smith Decl. at ¶¶ 6-9.

### A.   Plaintiff Will Likely Succeed on the Merits.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has three elements. *See* 15 U.S.C. § 1125(a); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). Plaintiff must show "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Id*.

Here, Plaintiff's MILWAUKEE Marks are registered with the U.S. Patent and Trademark Office. *See* Paragoso Decl. ¶¶ 5–9; Compl. ¶¶ 9–12 & Ex. 1. Plaintiff's MILWAUKEE Marks are distinctive and valid. *Id*. The registration certificates constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the MILWAUKEE Marks pursuant to 15 U.S.C. § 1057(b). The MILWAUKEE Marks have been continuously used and never abandoned. *Id.*

Further, Plaintiff has not authorized Defendants to use Plaintiff's MILWAUKEE Marks, and none of the Defendants are authorized retailers of Plaintiff's Products. Paragoso Decl. ¶ 16. Finally, by marketing their goods under Plaintiff's MILWAUKEE Marks, the defendants are mis-identifying their counterfeit products as Plaintiff's Products, which is likely to cause confusion to consumers in the marketplace that the goods they are purchasing are genuinely Plaintiff's. *See id.* at ¶ 17.

10

The Third Circuit has held that a likelihood of confusion can be found "when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Dranoff-Perlstein Assocs. V. Sklar,* 967 F.2d 852, 862 (3d Cir. 1992). If the goods that are involved with the trademark dispute are directly in competition with one another the court "need rarely look beyond the mark itself" when analyzing the likelihood of confusion. *Id.* at 862. In this case the Defendants are directly marketing their goods, in direct competition with Plaintiff's Products, while utilizing identical copies of Plaintiff's MILWAUKEE Marks. *See* Paragoso Decl. ¶ 14.

Plaintiff has submitted extensive documentation showing that Defendants are selling Infringing Products that look similar to genuine Plaintiff Products and use infringing and counterfeit marks identical to Plaintiff's MILWAUKEE Marks, creating a high likelihood of confusion among consumers. *See* Compl. Ex. 2; Paragoso Decl. ¶¶ 14–18. Both Plaintiff and Defendants advertise their products to consumers via the Internet, targeting consumers searching for genuine Plaintiff's Products. *See* Paragoso Decl. ¶¶ 15–16. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Plaintiff's Products from Infringing Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Plaintiff's Products to purchase Infringing Products instead. In that regard, Defendants advertise Infringing Products using the Plaintiff's MILWAUKEE Marks. *Id*.

While helpful, evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Plaintiff's Products. *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 214 (3d Cir. 2000).

Accordingly, Plaintiff is likely to establish a prima facie case of trademark infringement, counterfeiting, and false designation of origin arising from Defendants' unauthorized use of the MILWAUKEE Marks.

**B.      There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary and Emergency Relief.**

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Irreparable harm is harm that cannot be compensated by money alone and must be of a peculiar nature. *Morton v. Beyer,* 822 F.2d 364, 372 (3d Cir. 1987). The Third Circuit has held that an injury to goodwill and reputation will constitute irreparable harm. *See Opticians Ass'n of Am. V. Indep. Opticians of Am.,* 920 F.2d 187, 196 (3d Cir. 1990). Moreover, if the Court finds that there is a likelihood of confusion by the Defendant's use of the Plaintiff's Trademark, it is inescapable that there has been irreparable harm. *Pappan Enters v. Hardee's Food Sys.,* 143 f.3d 800, 805 (3d Cr. 1998).

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary

12

Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Paragoso Decl. at ¶¶ 18-21.

Defendants' unlawful infringement is causing and will continue to cause irreparable harm to Plaintiff by virtue of Plaintiff's loss of the exclusivity to which it is entitled under the Lanham Act. Defendants' misconduct is further causing irreparable harm to Plaintiff's business reputation and goodwill. *See* Paragoso Decl. ¶¶ 18-22. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of MILWAUKEE Marks and preserve the *status quo* until a hearing can be held.

In the absence of a temporary restraining order, based on specific evidence and investigation detailed in the Smith Declaration at ¶ 8, Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court, as is common in cases involving anonymous online sellers of counterfeit goods. *See* Declaration of Keaton Smith ("Smith Decl.") at ¶ 8. Courts have recognized that civil actions against operators of e-commerce stores like the Seller Aliases present special challenges that justify proceeding on an *ex parte* basis. *See Airigan Sols., LLC v. Rainbow Island Store,* Civil Action No. 2:23-cv-1327, 2023 U.S. Dist. LEXIS 231997, at *5 (W.D. Pa. July 28, 2023) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). Defendants' offshore infringing activities are specifically designed to be covert, and as it is essential to establish an economic disincentive for infringement, courts regularly issue *ex parte* temporary restraining orders for such cases. *Intenze Products, In.c v. 1586, et al.,* No. 18-cv-4611-RWS (S.D.N.Y. May 24, 2018); *Allstar Marketing Group, LLC v. 158, et al.,* No. 18-cv-4101-GHW, Dkt. 22 (S.D.N.Y. May 17, 2018); *William Mark Corporation v. 1&cc, et al.,* No. 18-cv-3889-RA, Dkt. 18 (S.D.N.Y. May 2, 2018).

13

Thus, Plaintiff has shown that it will suffer irreparable harm which weighs in favor of entry of a temporary restraining order.

### C.   The Balancing of Harms Tips in Plaintiff's Favor.

As noted, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm, then it must next consider the harm that Defendants will suffer if preliminary relief is granted and balance such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.,* 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Thus, Plaintiff has shown that any harm to Defendants would be minimal which weighs in favor of entry of a temporary restraining order.

### D.   The Public Interest Is Served by Entry of a Temporary Restraining Order.

Defendants have been profiting and continue to profit from the sale of Defendants' Infringing Products. Thus, the interest of the public would further be served by an injunction that prevents consumer confusion. The public is currently under the false impression that Defendants

14

are operating their e-commerce stores with Plaintiff's approval and endorsement, or that the products they are purchasing are responsibly sourced. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct immediately. The public has the right not to be confused or deceived as to the source of the goods and services it is purchasing from Defendants. The injunctive relief Plaintiff requests will specifically remedy any future injuries to the public by enjoining Defendants from further selling their Infringing Products and harming consumers. Courts routinely recognize that "the public has an interest in the protection of intellectual property, as first recognized by the framers of the constitution." *AFG Media Ltd., v. Poptrend-Official*, Civil Action No. 2:23-cv-1840, 2023 U.S. Dist. LEXIS 230686, at *24 (W.D. Pa. Dec. 29, 2023). Unless Defendants' alleged unauthorized use of MILWAUKEE Marks is enjoined, the public will continue to be confused and misled by Defendants' alleged infringing conduct. Thus, Plaintiff has shown that the public interest weighs in favor of entry of a temporary restraining order.

In conclusion, Plaintiff has established that all four factors weigh in its favor. The Court should enter a temporary restraining order requiring Defendants to immediately cease all use of the MILWAUKEE Marks on or in connection with all Seller Aliases.

### A. Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff requests an ex parte restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an ex parte restraint will ensure Defendants' compliance. If such a restraint is not granted

15

in this case, Defendants will be in a position to elect to disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. See Grupo Mexicano De Desarrollo v. Alliance Bond Fund, 527 U.S. 308, 325 (1999) (holding that asset freeze pending outcome of case is proper where plaintiff seeks equitable relief); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case.").

Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay Plaintiff all profits realized by Defendants for Defendants' unlawful acts. The method of calculating actual damages will include, but not be limited to, the assessment of lost sales, damage to brand reputation, and costs incurred in enforcing Plaintiff's trademark rights. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. FTC v. Commonwealth Mktg. Grp., Inc., 72  F. Supp. 2d 530, 536 (W.D. Pa. 1999).

Additionally, courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *See Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 325 (1999) (holding that asset freeze pending outcome of case is proper where plaintiff seeks equitable relief); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final

16

disposition of this case."). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay Plaintiff all profits realized by Defendants for Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. *FTC v. Commonwealth Mktg. Grp., Inc.,* 72 F. Supp. 2d 530, 536 (W.D. Pa. 1999) (recognizing court's equitable authority to freeze assets where necessary to preserve equitable relief and prevent dissipation).

Plaintiff has shown a strong likelihood of success on the merits, immediate and irreparable harm suffered as a result of Defendants' activities, and, based on evidence in the Smith Declaration regarding the nature of these anonymous offshore sellers and their past conduct patterns, that unless Defendants' assets are frozen, Defendants can and likely will hide or move their funds to other unidentifiable or offshore bank accounts outside of the jurisdiction of this Court. Accordingly, an ex parte asset restraint is proper here.

## V.    **DEFENDANTS ARE PROPERLY JOINED IN THIS ACTION**

The Rule 20(a) joinder requirement is satisfied if the right to relief "arises out of the same transaction occurrence, or series of transactions. Fed. R. Civ. P. 20. The Third Circuit has adopted a permissive approach toward joinder where the Defendants do not necessarily even need to know about one another, as long as their actions are a part of the "same transaction, occurrence, or series of transactions or occurrences," and are logically related to one another. *Malibu Media, LLC v. Doe,* No. 12-2095, 2012 U.S. Dist. LEXIS 191022 at *5 (E.D. Pa. Sep. 27, 2012).

The allegations in Plaintiff's Complaint in the instant case demonstrate that the Defendants are acting in almost identical manner and during the same or substantially similar time frame to sell counterfeiting products, collectively in the same occurrence of mass harm, and thus show a logical relationship between them that supports joinder. *Id.* Plaintiff alleges that Defendants here

17

took advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate the MILWAUKEE Marks with impunity.

As shown by the evidence attached to the Complaint at Exhibit 2, Defendants are all offering for sale and/or selling counterfeit and otherwise infringing products using the same trademark without Plaintiff's approval to consumers in this Judicial District and throughout the United States. *See* Paragoso Decl. at ¶ 14. Further, at such an early stage of litigation, Plaintiff is not required to definitively prove the commonality of ownership of the Defendants without adversarial presentation and opportunity to conduct meaningful discovery. Thus, at this stage, joinder of the Defendants listed on Schedule A to the Complaint at this stage is proper.

## VI.  **PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY**

The United States Supreme Court has held that federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their online infringing sales operations, as well as the IP addresses Defendants use to login and access their stores and accounts linked to the Seller Aliases. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts and account users so that the proper Defendants can be discovered and their accounts restrained is necessary to

ensure that these activities will be contained and constitutes good cause. *See, e.g.*, *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished order granting expedited discovery for identification of defendants and asset restraint in intellectual property infringement case). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## VII.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); Fed. R. Civ. P. 65(c). As a condition of preliminary injunctive relief pursuant to Fed. R. Civ. P. 65(c), a successful applicant for a preliminary injunction shall post a bond, "in such sum as the [district] court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Thus, the bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989) (quotations omitted).

Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting and infringing activities, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00) which is consistent with bond amounts in similar related cases in this district. *See, e.g., SHNMIN LLC v. BGDZJGFZJGFKHZGJ, et al.* No. 2:25-cv-00309 (W.D.Pa. March 6, 2025) (Wiegand, C.) (Temporary Restraining Order entered with $5,000 bond required).

19

## VIII.   <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court enter a temporary restraining order requiring Defendants to immediately cease all use of the MILWAUKEE Marks  on or in connection with all Seller Aliases, restraining Defendants' assets, permitting Plaintiff to engage in expedited discovery, and setting a bond of $5,000.

Date: February 11, 2026

Respectfully submitted,

<u>*/s/ Keaton Smith*</u>
Keaton Smith IL #6347736
Shengmao (Sam) Mu NY #5707021
Abby Neu IL #6327370
Ryan E. Carreon DE #7305
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (872) 294-3799
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*